* Parts III and IV of this opinion are not certified for publication. (See Cal Rules of Court, rules 976(b) and 976.1).
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 928 
OPINION
The trial court terminated the parental rights of appellant Candy M. and freed minor siblings Barbara and Shannon P. for adoption. Candy appeals,[1] contending that her due process rights were violated when the trial court (1) terminated reunification services on the same day that jurisdiction was found on the subsequent petitions; (2) based its decision to terminate reunification services on outdated information; and (3) failed to inform her at the six-month status review hearing that if her children were not returned to her before the twelve-month hearing, her parental rights could be terminated. We affirm the orders.
 I. FACTS
Appellant Candy M. is the mother of two minor children — Barbara P. was born in January 1986 and Shannon P. was born in December 1989. Candy had a history of commitment to mental institutions. In July 1991, she was arrested for writing bad checks and was jailed in the mental health unit of an Arizona jail. She arranged to have her mother care for her daughters, but after three weeks, respondent Sonoma County Social Service Department took them into custody and placed them in a shelter. Several days later, the department filed juvenile dependency petitions on behalf of Barbara and Shannon. (See Welf. Inst. Code, § 300, subd. (g).)[2] The petitions alleged that placement with Candy's mother was not appropriate for them because of her lack of permanent housing, her temporary housing with other relatives and her age. A detention hearing was conducted on July 31, 1991, approving the detention of the minors.
In August 1991, the minors were ordered to be placed in a foster home. At a September 1991 hearing, neither parent appeared, and the court took jurisdiction by default. Barbara and Shannon were declared dependent children. (See § 300, subd. (g).)
Candy was released from jail in Arizona in late September 1991, but did not attempt to contact the department until mid-November 1991. Meanwhile, *Page 930 
Barbara began psychotherapy and both minors were placed in a foster home. In December 1991, this placement proved inappropriate. Barbara and Shannon were temporarily returned to the shelter and placed in another foster home after the first of the year.
Candy agreed to the terms of a reunification plan in December 1991. These terms included regularly visiting the minors, submitting to a psychological evaluation, participating in counseling and parenting classes, securing employment and stable housing, and signing appropriate release forms. The next month, Candy requested modification of this plan.
On January 31, 1992, the department filed subsequent petitions, alleging that Candy failed to protect Barbara and Shannon. (See §§ 300, subd. (b), 342.) The petitions alleged that Candy refused to leave an address or telephone number with the department, exhibited emotionally disturbed behavior, and refused to participate in a psychological evaluation or to authorize the release of her Arizona mental health evaluation.
In March 1992, Candy was diagnosed by a psychologist as obsessive and impulsive. The psychologist recommended that Candy undergo psychiatric evaluation for psychotropic drugs and stated that the minors should not be returned to her until their relationship improved. A psychologist also evaluated Barbara, finding that she was experiencing emotional difficulties, and recommended continued psychotherapy. The department reported that Candy had not complied with many aspects of the reunification plan. At this time, Candy was living in San Francisco, while the minors were placed within Sonoma County.
In June 1992, Candy demurred to the subsequent petitions. After the demurrer was sustained with leave to amend, the department filed amended subsequent petitions. (See §§ 300, subd. (b), 342.) The second amended petitions alleged that Candy refused to leave an address or telephone number with the department, was unable to relate to the minors or to understand their emotional problems, was unable or unwilling to acknowledge psychological problems, was unwilling to accept medication as part of a treatment plan, was unable to maintain a satisfactory relationship contributing to the minors' emotional problems, and her poor judgment and denial of psychological problems would place the minors at increased risk if returned to her.
Later that month, the court conducted a six-month review hearing on the original petition; a contested jurisdictional hearing on the second amended *Page 931 
subsequent petitions was continued. It ruled against returning the minors to Candy's care. (See § 300, subd. (g).) She was ordered to participate in therapy, to sign appropriate releases of information and to demonstrate that she had safe and stable housing. If all the therapists agreed, the court would allow Candy to have overnight visits with the minors.
In August 1992, Candy filed formal objections to the terms of the reunification plan. The parties attempted to negotiate a visitation agreement, without success. In October 1992, the court adopted a tentative plan for visitation. In December 1992, the department discovered that Candy had not leased her San Francisco apartment, but was living there as a guest of the tenant, who now wished her to leave. Candy admitted that she had lied when she submitted a fraudulent lease as proof of stable housing. Therapy that was scheduled to occur at the apartment was cancelled.
In December 1992, the court denied Candy's request to find the department in contempt for failing to engage in good faith efforts to negotiate a visitation agreement. Candy then moved to set aside the finding of jurisdiction by default on the original petitions. She later dropped this motion.
In January 1993, the third amended subsequent petitions were filed. These petitions alleged failure to protect as a ground for jurisdiction and added allegations pertaining to serious emotional damage. (See §§ 300, subds. (b), (c), 342.) By January 28, 1993, Candy had received 18 months of reunification services. (See § 366.22, subd. (a).) In February 1993, the department recommended that services be terminated and that a permanent plan of adoption be entered, with the concurrence of the minors' attorney. The same month, Barbara and Shannon were placed in a new foster home.
In February 1993, the department learned that Candy had written bad checks in 1992. Candy wrote at least 190 checks for more than $8,000 on accounts in which she had insufficient funds or that had already been closed.
In February and March 1993, the court conducted a jurisdictional hearing on the subsequent petitions and contested 12-month and 18-month review hearings on the original petitions. In March 1993, the court found that after 19 months of reunification services, Candy did not have a stable home or employment. Her practice of writing bad checks continued to put her children at risk. The court concluded that Candy had made no significant progress in her therapy — her concern was for her own problems and not for those of her children. It also noted that her insistence on living in San Francisco while her children were dependent children in Sonoma had worked against the department's efforts to reunite the family. It rejected the *Page 932 
claim that the department had made reunification difficult, noting that the department had taken the unusual step of arranging for a caseworker to take the minors to San Francisco for therapy at Candy's apartment. It formally found that reasonable reunification services were provided or offered to Candy and terminated them.
Although the court made these findings on the basis of the original petitions and opined that the subsequent petitions might be moot, it also found the jurisdictional allegations of serious emotional damage contained in the third amended subsequent petitions to be true by clear and convincing evidence. (See §300, subd. (c).) It rejected the allegations of physical harm. (See § 300, subd. (b).) It found by clear and convincing evidence that to return the minors to Candy would create a substantial risk of detriment to the minors' emotional well-being. It ordered a termination hearing to be conducted. (See § 366.26.)
On September 21, 1993, the court held the termination hearing. The department recommended that Candy's parental rights be terminated and that Barbara and Shannon be placed for adoption. In September 1993, the court issued a tentative decision in accord with this recommendation. In November 1993, final orders were entered terminating parental rights and finding by clear and convincing evidence that it was likely that the minors would be adopted. Candy appeals these orders.[3]
 II. TERMINATION
First, Candy contends that her due process rights were violated when the trial court terminated reunification services ordered pursuant to the original petitions on the same day that jurisdiction was found on the subsequent petitions. (See U.S. Const., Amend. XIV, § 1; Cal. Const., art. I, § 7.) She argues that the trial court's finding of jurisdiction on the subsequent petitions entitles her to reunification services in addition to the 18 months of services that had already been provided to her on the original petitions.
When a minor is removed from a parent's custody on an original petition, the court must order reunification services for as long as 18 months after the minor's removal. (§ 361.5, subd. (a).)(1) These services may be extended beyond this 18-month period if the department has, in the court's opinion, failed to make a reasonable effort to provide these services during this time. (In re Daniel G. (1994) 25 Cal.App.4th 1205, 1213-1214 [31 Cal.Rptr.2d 75]; see In re Dino E. (1992) 6 Cal.App.4th 1768, 1777-1778 *Page 933 
[8 Cal.Rptr.2d 416].) When a minor has been declared a dependent child and the department alleges new facts or circumstances sufficient to find that the minor should be found to be a dependent child, the department files a subsequent petition, alleging the new information. By statute, all procedures and hearings required for an original petition also apply to a subsequent petition. (§ 342.) Candy reasons that this statutory language requires the court to order additional reunification services after finding jurisdiction on the basis of the allegations of the subsequent petition.
Our independent search revealed no cases discussing the reunification services required after a finding on a subsequent petition. A similar argument to that raised by Candy has been raised in a case involving a supplemental petition. Based on the procedural similarity between an original and a supplemental petition, a parent argued that she was entitled to a new reunification plan on a supplemental petition even though she had already been provided reasonable services for 18 months on the original petition. (See In re Michael S. (1987) 188 Cal.App.3d 1448, 1452-1457 [234 Cal.Rptr.2d 84].) The court held that although the applicable statutes and rules provided similar procedures on original and supplemental petitions, a further reunification plan was not required in all cases. "To conclude otherwise could defeat the state's interest in assuring that children whose parents are incapable of providing a secure and stable environment for them are given an alternative opportunity for such a home life within a reasonable time." (Id., at p. 1457.) The appellate court found it more reasonable to construe the applicable statutes and rules as mandating the court to formulate and order an adequate reunification plan only in the first instance — at the initial disposition on a section 300
petition. (2) Failure to order additional reunification services when a minor is removed from a parent on a supplemental petition is reversible error only if, under the particular facts of the case, the court abuses its discretion in failing to order these services. (188 Cal.App.3d at p. 1459.)
We recognize that subsequent and supplemental petitions are different. A subsequent petition is filed when new, independent allegations of dependency can be made after the court has initially declared a minor to be a dependent child. (§ 342.) A supplemental petition is filed, inter alia, when a dependent child has been placed with a parent, but the department now seeks to remove the child, effectively requesting the court to modify its previous placement order. (See § 387, subd. (a).) Despite these distinctions, we believe the same rule ought to apply — that is, a finding of jurisdiction on a subsequent petition should not automatically trigger a new period of reunification services. As this procedure satisfies due process in cases in which a *Page 934 
parent is given custody of the child and the department later seeks removal, it is equally satisfactory in cases in which there are alleged to be multiple bases of dependency jurisdiction. This statutory interpretation of the reunification services required on a subsequent petition is supported by the same policy that applies to cases involving supplemental petitions — the state's interest in assuring that minors whose parents cannot provide them with a stable home have another opportunity for such a home life within a reasonable time. (See In re Michael S., supra,
188 Cal.App.3d at p. 1457.)
(3) We interpret the applicable statutes and rules to mandate the court to order adequate reunification services only in the first instance — at the initial disposition on an original dependency petition. When the court later considers a subsequent petition alleging additional bases of dependency jurisdiction, further reunification services are not required in all cases. Failure to order additional reunification services after finding jurisdiction on a subsequent petition constitutes reversible error only if the particular facts of the case demonstrate an abuse of discretion in failing to order additional services. Key factors in this determination would be whether the services already offered were adequate, whether they addressed the concerns raised by the subsequent petition, and whether the objectives of the reunification plan — the reunification of the family — could be achieved with the provision of additional services. (See § 361.5, subd. (a).)
(4) The case before us is not a case that would benefit from additional services. Candy received more than 18 months of services under the original petitions. Many of the services offered under the plan adopted pursuant to the original petitions — psychological evaluation, counseling, and parenting classes — were directly relevant to the allegations of serious emotional damage raised in the subsequent petitions. The court found that Candy made no significant progress in her own therapy and that the department had provided reasonable reunification services. The court rejected her claims that the department had made reunification difficult, finding instead that she had impeded progress in this regard. Candy was not reunited with her children because she refused to accept that her children showed any signs of emotional distress and was hostile to the ideas of psychological evaluation and counseling. In such a case as this, additional reunification services would have added to the time that the minors were deprived of a stable and secure home, would not have been more specifically tailored to the allegations of the subsequent petition than those already required under the original petition, and — given Candy's demonstrated behavior — would not have made reunification of this family more likely. Thus, the trial court did not violate Candy's due process rights when it refused to order additional reunification services. *Page 935 
 III., IV.*
. . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 V. CONCLUSION
The orders are affirmed.
Poche, Acting P.J., and Perley, J., concurred.
Appellant's petition for review by the Supreme Court was denied March 16, 1995.
[1] Candy filed a timely appeal from the orders terminating parental rights. She challenges the court's March 1993 findings made after the 18-month hearing, rather than those made at the September 1993 termination hearing. Findings subsumed within orders terminating reunification services and setting a termination hearing are reviewable on appeal from a final order terminating parental rights. (In re Matthew C. (1993) 6 Cal.4th 386, 401 [24 Cal.Rptr.2d 765, 862 P.2d 765].)
[2] All statutory references are to the Welfare and Institutions Code.
[3] The parental rights of presumed father Kenneth P. were also terminated, but he is not a party to this appeal.
* See footnote, ante, page 926. *Page 936