Filed 5/23/13  A.T. v. Super. Ct. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| A.T.,<br><br>        Petitioner,<br><br>v.<br><br>**THE SUPERIOR COURT OF HUMBOLDT COUNTY,**<br><br>        Respondent;<br><br>**HUMBOLDT COUNTY DEPARTMENT OF HEALTH & HUMAN SERVICES et al.,**<br><br>        Real Parties in Interest. | **A138097**<br><br>(Humboldt County Super. Ct. No. JV110043 & JV110061) |

Petitioner A.T. (mother) has two children, G.T. and M.T.  The children were declared dependents of the juvenile court, removed from mother's custody, and returned to her at the 12-month review hearing.  (Welf. & Inst. Code, §§ 300, 366.21.)[1]  Concerns arose about mother's ability to care for the children due to her mental health and anger management issues, and the court again removed the children after sustaining petitions under sections 342 and 387.  Mother seeks extraordinary writ relief from an order denying her additional reunification services and setting the case for a hearing under section 366.26.  She argues that the court should have granted her an additional period of

_____

[1]  Further statutory references are to the Welfare and Institutions Code.

1

reunification services because the services provided to date had been inadequate. We disagree and deny the writ petition.

## I. BACKGROUND

Mother gave birth to her daughter, G.T., in February 2009. The Humboldt County Department of Health and Human Services (Department) received a referral for general neglect of the newborn baby, based on a report that mother was belligerent and mentally unstable while in the hospital to give birth and that she lacked adequate baby supplies. Mother utilized community resources and the report was deemed inconclusive.

In January 2011, when G.T. was almost two years old, the Department again received a referral for G.T. alleging that she had suffered emotional abuse at the hands of her stepfather, Gary T., due to severe domestic violence that he inflicted on mother. Mother was hospitalized as a result of one such episode.

On March 16, 2011, G.T. was admitted to the hospital emergency room with injuries that included a swollen left eye, two cuts above the eye, and bruising behind her right ear. A CT scan revealed fluid, most likely blood, in her maxillary sinus. Mother told a Department social worker that G.T. had awakened her at 2:30 a.m. She was fussy, so mother put her on a bean bag chair and turned on a movie. Mother went back to sleep and when she awakened again at 5:30 a.m., G.T. had the injuries. Mother said that G.T. must have fallen out of her bean bag chair and hit her head on a night stand or jewelry box in the room. She admitted arguing with Gary T. that night but claimed the argument had not become physical. The emergency room doctor who treated G.T. opined that her injuries were inconsistent with the facts reported by mother.

G.T. was taken into protective custody and a petition was filed alleging that she was a dependent child as described in section 300, subdivisions (a), (b), and (e). In April 2011, while the petition was pending, mother gave birth to G.T.'s half-brother, M.T., whose father was Gary T. M.T. was taken into protective custody and a petition was filed alleging that he was a dependent child under section 300, subdivision (j), due to acts of abuse and/or neglect against his half-sibling. Mother was convicted of felony child abuse based on G.T.'s injuries and was placed on probation.

2

The juvenile court sustained amended versions of the dependency petitions in June 2011. A report prepared by the Department for disposition indicated that mother and Gary T. continued to claim that G.T.'s injuries had been self-inflicted. At the dispositional hearing, also held in June 2011, the court removed the children from mother's custody and ordered a reunification plan for mother that included the completion of a child-abuse prevention program, participation in a domestic violence support group, and submission to a psychological examination. The children were placed in the home of Gary T.'s parents and a court appointed special advocate (CASA) was appointed for G.T.[2]

By the time of the six-month review hearing in December 2011, mother had completed a mental health assessment and had been diagnosed with post traumatic stress disorder (PTSD) and major depressive disorder. She had been receiving weekly one-on-one counseling and was taking medication. Mother and Gary T. had separated and mother was in a new relationship with D.V., with whom she was attending parenting classes. Mother had also completed the intake process for a child abuse prevention and treatment program and had been attending weekly since October. Although mother was participating in her case plan, there were concerns that she had significant anger issues; she had been overheard in a heated argument with D.V. on two occasions and had been confrontational with her social worker when discussing difficult subjects. Based on mother's progress, the Department recommended an additional six months of reunification services. The CASA agreed with the recommendation of additional services, but noted concerns about mother's new boyfriend and his criminal history, which included assault. The court ordered an additional six months of reunification services.

The report prepared by the Department for the 12-month review hearing held in May 2012 indicated that mother had begun individual therapy sessions in July 2011, and

---

[2] Reunification services were also ordered for Gary T. as to M.T., but were eventually terminated. He is not a party to this writ proceeding.

that while she had made progress, her symptoms interfered with her daily functioning. Mother had not seen or spoken to her counselor since April 2012, which caused him concern that she would discontinue counseling if the children were returned to her. She had been attending medication assessment appointments. As for her living situation, mother had been sharing a room at the Serenity Inn, but had moved into a friend's room at the Blue Heron motel. She did not want to live at the Multiple Assistance Center (MAC), as suggested by the Department, because she preferred to find housing where her boyfriend D.V. could live with his dog. Between the time of the six-month review hearing and the 12-month review hearing, mother had missed several visits with her children.

The Department recommended that G.T. and M.T. be returned to mother subject to conditions that she apply for housing at MAC, ensure her children had adequate housing, and attend all of her therapy sessions. The CASA disagreed, noting that mother had missed several visits and brought her boyfriend to others, suggesting that the boyfriend's needs took precedence over the children's. The CASA was concerned that mother had unrealistic expectations of G.T. and reacted angrily to fairly normal toddler behavior, such as pulling toys away from her little brother and allowing a chair on which he was playing to tip over. The court ordered the children returned to mother with family maintenance services.

At an interim review hearing held in July 2012, the Department reported that mother had high expectations of G.T. that were not age appropriate and, given mother's authoritarian parenting style, were likely to lead to conflict. The social worker recommended that mother attend parent-child interactive therapy (PCIT) with G.T. Mother and the children had moved with D.V. into a two-bedroom apartment.

In an interim report prepared in August 2012, the Department noted that mother had missed a therapy session. There had been reports of her putting duct tape over G.T.'s mouth when she acted out, but mother denied this and said she had only threatened to do so. Mother had made contact with a PCIT clinician but had cancelled a number of appointments.

4

In August 2012, mother's therapist advised the Department that he had reassessed her and diagnosed her as suffering from recurrent depressive disorder, PTSD, and borderline personality disorder. Mother did a lot of "finger-pointing" and expressed a lot of anger. In September 2012, a representative from the Child Abuse Prevention and Treatment Program informed the social worker that mother felt victimized by her children and that her understanding of their abilities was inaccurate. Mother had been encouraged to try positive engagement with G.T. rather than constantly punishing her. On one occasion, mother became verbally abuse in response to some feedback she was given regarding an incomplete assignment, and acted in a "very intimidating" manner.

A PCIT therapist who visited mother's home told the social worker that mother was very hard on G.T. and focused only on the negative things she did. Mother spoke of G.T. in negative terms, calling her mean, hateful, spiteful, and a brat. G.T. had been diagnosed with an adjustment disorder with mixed episodes of depression and anxiety. Mother blamed the children as she believed the problem was their behavior, not her responses.

Also in September 2012, mother asked D.V. to move out of her home. He contacted the social worker to describe mother's treatment of the children, reporting that mother used foul words, grabbed the children, slammed doors and threw objects. According to D.V., mother started nagging and screaming as soon as she got up in the morning and had called M.T. "you fucking little bastard." G.T. was always in a time out in the corner.

The Department detained the children in October 2012 and filed a subsequent petition under section 342 and a supplemental petition under section 387 based on mother's mental health and anger management issues.[3] In the reports submitted for the

---

[3] A subsequent petition under section 342 is filed when new, independent allegations of dependency can be made after the court has already declared the child a dependent, whereas a subsequent petition under section 387 may be filed when the social services department seeks to modify a previous placement order (including an order placing the child back with the parent). (*In re Barbara P.* (1994) 30 Cal.App.4th 926, 933.)

combined jurisdictional hearing on these petitions, and in addition to the information described above, the social worker reported that mother had been assaulted by her new boyfriend, E.B., in October 2012. Mother continued to receive services, including visitation, therapy, and child abuse prevention counseling.

In December 2012, the court sustained the petitions under sections 342 and 387 and ordered mother to undergo a mental health evaluation before the dispositional hearing. In January 2013, mother was examined by psychologist Andrew Renouf, Ph.D., who assessed her as having depression with brief episodes of mania that included irritable and angry moods. Dr. Renouf believed that mother suffered from bipolar disorder, and though he had considered her prior diagnosis of borderline personality disorder, he was not successful in reaching mother's therapist and could not confirm the validity of that diagnosis. He noted that bipolar disorder and borderline personality disorder share many of the same features and have similar treatments, though borderline personality disorder involves long-standing character traits and has a poorer prognosis. Mother had described to Dr. Renouf a history of "cutting behaviors" as a form of self-harm, something that could be very distressing for her children if they were to witness it. Her scores on the Child Abuse Potential Inventory indicated that she had a very high risk of being abusive. If her mental health issues could be adequately treated, Dr. Renouf believed there was a high probability that her ability to parent would improve and she would be better able to access services. He assumed that the psychotropic medication she was currently taking was inadequate, and noted that proper medication would increase the chance that psychotherapy would be effective.

At the dispositional hearing on the section 342 and 387 petitions, held in February 2013, the court removed the children from mother's custody, denied reunification services and set the case for a hearing under section 366.26. The court noted that the case had progressed beyond the 18-month period during which services could be offered, and found that the services provided by the Department to date had been reasonable.

6

## II.  DISCUSSION

Mother argues that the court should have ordered additional reunification services rather than setting the case for a section 366.26 hearing.  We disagree.

When, as here, a child is under three years of age at the time of removal, court-ordered reunification services "shall be provided for a period of six months from the dispositional hearing . . . but no longer than 12 months from the date the child entered foster care. . . ."  (§ 361.5, subd. (a)(1)(B).)  A child is "deemed to have entered foster care on the earlier of the date of the jurisdictional hearing held pursuant to Section 356 or the date that is 60 days after the date on which the child was initially removed from the physical custody of his or her parent or guardian.  (§ 361.49.)  The presumptive time limit for services "may be extended up to a maximum time period not to exceed 18 months after the date the child was originally removed from physical custody of his or her parent or guardian if it can be shown, at the [12-month review hearing] held pursuant to subdivision (f) of section 366.21, that the permanent plan for the child is that he or she will be returned and safely maintained in the home within the extended time period.  The court shall extend the time period only if it finds that there is a substantial probability that the child will be returned to the physical custody of his or her parent or guardian within the extended time period or that reasonable services have not been provided to the parent or guardian."  (§ 361.5, subd. (a)(3); see *Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 843 [parent of child under three was presumptively entitled to six months of services under former version of § 361.5].)[4]

G.T. was detained in foster care in March of 2011 and M.T. joined his sister upon his birth in April 2011.  The jurisdictional and dispositional hearings were held in June 2011.  Using M.T.'s case as the reference point, mother was presumptively entitled

---

[4] Section 361.5, subdivision (a)(4) allows for an additional extension of services, not to exceed 24 months after the date the child is placed in foster care, but only in cases where the parent has been making significant progress in a court-ordered residential substance abuse treatment program, or has recently been discharged from incarceration or institutionalization. (§ 361.5, subd. (a)(4); see § 366.22, subd. (b).)  Those circumstances are not present here.

to reunification services for six months from the dispositional hearing (until December 2011), with an outside limit of 12 months from the time M.T. "entered foster care" (June 2012).  If the court found a substantial probability of return or the provision of inadequate services by the Department, mother would have been entitled to up to 18 months of services from the date of the children's original removal from her physical custody in April 2011.  Mother received reunification services from June 2011 until June 2012, when the children were returned to her, family maintenance services until October 2012, when the children were again removed from her custody, and additional court services until at least November 2012, after the children were detained following the hearing on the sections 342 and 387 petitions.  She had, therefore, received more than the statutory maximum of 18 months of court-ordered services.  (See *In re N.M.* (2003) 108 Cal.App.4th 845, 853, superseded by statute on other grounds in *In re T.W.* (2013) 214 Cal.App.4th 1154, 1168 [18-month limitation in § 361.5 applies to combination of reunification and maintenance services]; *Carolyn R. v. Superior Court* (1995) 41 Cal.App.4th 159, 166-167 [when subsequent petition under § 387 is sustained, case does not go back to "square one" with respect to reunification services; but picks up where case left off chronologically].)

Mother argues that the reunification period should have been extended because the services provided by the Department were unreasonable.  As she observes, case law has recognized that the juvenile court has the implied authority to extend the 18-month maximum for reunification when reasonable services have not been offered.  (See *Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996, 1016-1017 [no reasonable services ever provided to parent during reunification period]; *In re Daniel G.* (1994) 25 Cal.App.4th 1205, 1209 [social worker had never spoken to mother; trial court had found services to be a "disgrace" but erroneously felt constrained to terminate reunification after 18 months]; *In re Dino E.* (1992) 6 Cal.App.4th 1768, 1777 [social services agency failed to develop reunification plan for father].)  Mother suggests that the services provided in her case were inadequate because she was misdiagnosed by her therapist as suffering from borderline personality disorder when in fact she was (according to the

psychological evaluation prepared by Dr. Renouf) bipolar. She submits that the Department should have done more for her because her psychological symptoms were interfering with her ability to access mental health services.

At the six- and 12-month review hearings, the court found by clear and convincing evidence that reasonable services had been provided to mother. Mother did not object to these findings or challenge these prior orders by writ or appeal, thereby forfeiting her challenge to the adequacy of services prior to the 12-month review hearing. (*Melinda K. v. Superior Court* (2004) 116 Cal.App.4th 1147, 1156-1157; *In re Cicely L.* (1994) 28 Cal.App.4th 1697, 1705.) But, even assuming it is appropriate to review the sufficiency of the reunification services from the inception of the dependency case, we would reject mother's argument.

We must uphold the juvenile court's determination that reasonable services were offered if it is supported by substantial evidence. (*Robert L. v. Superior Court* (1996) 45 Cal.App.4th 619, 625-626.) We view the evidence in a light most favorable to the Department and indulge in all legitimate and reasonable inferences to uphold the juvenile court's decision. (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545.) "[W]e must also recognize that in most cases more services might have been provided, and the services which are provided are often imperfect. The standard is not whether the services provided were the best that might have been provided, but whether they were reasonable under the circumstances. [Citation.]" (*Elijah R. v. Superior Court* (1998) 66 Cal.App.4th 965, 969.)

Here, mother lost custody of her children because her two-year-old daughter G.T. suffered serious injuries that mother could not adequately explain, set against a backdrop of domestic violence between mother and Gary T., M.T.'s father. A psychological evaluation that the Department arranged early in the case revealed that mother suffered from mental health issues that included PTSD and depression. Mother's case plan included visitation with her children, individual therapy, a parenting class, a child abuse prevention treatment program, and housing assistance. She received medication to treat her mental health issues, and attended regular appointments to evaluate the efficacy of

9

this medication. The reunification services enabled mother to regain custody of her children, although her therapist had concerns about her willingness to continue treatment and mother seemed reluctant to participate in the PCIT to improve her very challenging relationship with G.T. After the children were returned to mother's care, it became clear that mother's anger and mental health issues were interfering with her ability to parent, at which point the Department filed petitions under sections 342 and 387.

It is true that Dr. Renouf, the psychological evaluator appointed after the sections 342 and 387 petitions were filed, could not confirm that mother suffered from borderline personality disorder as diagnosed by her therapist, and believed she instead suffered from bipolar disorder. According to Dr. Renouf, the treatment for bipolar disorder, though similar to that for borderline personality disorder, tends to be more effective. But, even if we were to assume that bipolar disorder was the correct diagnosis in mother's case (to the exclusion of borderline personality disorder), this does not mean the Department was remiss or that the services offered were inadequate.

Mother argues that her case is analogous to *In re K.C.* (2012) 212 Cal.App.4th 323 (*K.C.*), in which the appellate court concluded that reasonable reunification services had not been provided at time of the 12-month review hearing. (*Id.* at pp. 329-331.) The father in *K.C.* had undergone a psychological evaluation that identified certain mental health issues, and the evaluator recommended a further examination to determine the efficacy of psychotropic medication. (*Id.* at p. 329.) The social services agency referred father to a public mental health clinic, but when that clinic determined that father did not meet their treatment criteria, the agency made no other attempts to help him secure the evaluation. (*Ibid.*) The court concluded that the agency had effectively delegated the burden of seeking treatment to the father, who was ill equipped to find it in light of the mental health issues the treatment was designed to remediate. (*Id.* at p. 330.) Under the circumstances, the failure to arrange a medication evaluation for the father was unreasonable. (*Id.* at p. 334.)

The facts of *K.C.* are easily distinguishable from the Department's efforts in this case. As a result of the agency's inaction, the father in *K.C.* did not obtain a critical

psychological evaluation that was necessary for future treatment and reunification.  Here, mother received a mental health assessment, counseling, parenting classes, and housing assistance—indeed, the services provided were sufficient to enable her to regain custody of her children at the 12-month review hearing in June 2012.

Having received 18 months of reasonable court-ordered services, mother was not entitled to additional services after the court sustained the petitions under sections 342 and 387.

## III.  DISPOSITION

Mother's petition is denied on the merits.  This decision shall be final at the conclusion of the fifth court day after this opinion is filed.  (Cal. Rules of Court, rules 8.452(i), 8.490(b)(3).)  Mother's request to stay the hearing under section 366.26 is denied.

 

_____

NEEDHAM, J.

We concur.

_____

SIMONS, Acting P. J.

_____

BRUINIERS, J.

11