Filed 12/4/20  In re Angel S. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
### SECOND APPELLATE DISTRICT
### DIVISION THREE

| | |
|---|---|
| In re ANGEL S., et al., Persons Coming Under the Juvenile Court Law. | B302615 |
| DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 18CCJP04810A,B,C) |
| Plaintiff and Respondent, | |
| v. | |
| GABRIELA S., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Rashida A. Adams, Judge.  Affirmed.

Christina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and David Michael Miller, Deputy County Counsel for Plaintiff and Respondent.

Gabriela S. (mother) appeals from a November 22, 2019 dispositional order of the juvenile court. Mother's sole contention on appeal is that the juvenile court abused its discretion by denying her request to be permitted to live with her three children, who had been removed from her custody, under the supervision of the maternal grandmother. We find no abuse of discretion, and thus we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother has three children: Angel S. (born in June 2009), Camilla S. (born in November 2011), and Nathan S. (born in February 2018).[1] Throughout this proceeding, mother was in a relationship with Nathan's father, Carlos R. (father), whom she married in July 2018.

### A. Prior Dependency History

#### 1. Mother

Between 2010 and 2018, DCFS received seven referrals alleging abuse or neglect of Angel and Camilla. Most of the reports were deemed inconclusive or unfounded.

In 2013, the juvenile court sustained a petition alleging that mother and Camilla's father engaged in domestic violence in Angel's and Camilla's presence, mother used methamphetamines in the past and currently abused marijuana, and Angel's and Camilla's fathers had histories of illicit drug use and were incarcerated. Mother and the children received services from January 2013 to August 2014, when the case was terminated.

---

[1] Each of the children has a different father. During most of the period at issue in this case, Angel's and Camilla's fathers had little or no contact with the children.

2.      Father

In 2014, the juvenile court sustained a dependency petition concerning father's three older children.[2]  That case was still open in June 2018, when the present proceeding was initiated.

B.      *Current Referral; Petition*

In June 2018, the Los Angeles County Department of Children and Family Services (DCFS) received a referral that father had punched mother in the face and kicked her in the stomach during an argument.  The same month, mother tested positive for marijuana, and father admitted testing positive for methamphetamine in the open case involving his older children.

DCFS filed a juvenile dependency petition on August 1, 2018, alleging Angel, Camilla, and Nathan were juvenile court dependents pursuant to Welfare and Institutions Code[3] section 300, subdivisions (a), (b), and (j).  Specifically, the petition alleged that mother and father had a history of domestic violence (counts a-1, b-1), and father had a history of illicit drug use and was a current abuser of amphetamines and methamphetamines (count b-2, j-1).

On October 25, 2018, the juvenile court sustained count b-1 of the petition, finding that the domestic violence between mother and father put the children at risk of harm pursuant to section 300, subdivision (b).  The court declared the children juvenile court dependents, ordered Nathan removed from father, and ordered all three children placed with mother under DCFS

---

[2]     Those children, C.M.R., E.R., and C.J.R., are not subjects of this proceeding.

[3]     All subsequent statutory references are to the Welfare and Institutions Code.

supervision.  Father was granted monitored visits with Nathan, which were not to be monitored by mother.  Mother was ordered to enroll in a domestic violence program, a parenting class, and conjoint counseling with father.

In April 2019, the juvenile court found mother was in compliance with the case plan, but continued jurisdiction was necessary to ensure the children's safety.

C.    *Sexual Abuse Allegations*

In July 2019, seven-year-old Camilla reported that she had been sexually abused by father's 14-year-old son, Tito, with whom father had regular visitation.  Camilla said that while mother and father were out of the house, Tito put his penis in her vagina and forced Camilla to orally copulate him, ejaculating in her mouth and on her face.  Angel told an investigator that Camilla had reported the sexual abuse to him, saying that Tito had put his "private" in her "private" and in her mouth.  Both children said Camilla told mother about the incident.

Mother told a children's social worker (CSW) that she and father had told Tito "not to do it again, or they would take his PlayStation away."[4]  Notwithstanding Camilla's disclosure, mother had continued to allow Tito to spend time in the family home.

The CSW observed that when she first made mother aware of Camilla's disclosure, mother appeared supportive.  After father arrived, however, mother described Camilla as a "pathological liar" and questioned the veracity of her report.  Mother further

---

[4]    Mother also claimed, somewhat inconsistently, that she had not known of the abuse until informed of it by DCFS.

4

said that she planned to help father reunify with Tito and bring Tito to live with the family.

On August 1, mother reported she had taken Camilla for a medical examination that she said "disproved" the sexual abuse allegations. Mother also said Camilla had admitted making up the allegations. Subsequently, mother said she wanted to believe Camilla " 'but I just don't.' " The nurse who conducted Camilla's forensic exam said mother did not seem to understand that there often is no physical evidence of sexual abuse, especially when an exam is conducted several days after the abuse occurred.

Although mother denied that father had been living with her and the children, the CSW suspected otherwise, noting that mother asked father to stop at the store as though he lived in the house. The CSW also observed that Angel appeared to have been coached with regard to whether father lived in the home. The CSW spoke to Tito's case worker, who had been led to believe father lived with mother.

Father told the CSW he did not believe Tito had sexually abused Camilla, saying " 'there's no evidence' " and " 'the doctor said that probably she wasn't penetrated.' " He suggested Camilla may have made up the assault because of "jealousy."

D.      *Supplemental and Subsequent Petitions; Detention from Mother*

On September 4, 2019, the juvenile court ordered the children detained from mother. On September 10, 2019, DCFS filed a supplemental petition alleging that mother had allowed father to live in the home and have unsupervised access to the children in violation of the court's orders (count s-1); it also filed a

subsequent petition alleging that mother failed to protect Camilla from sexual abuse by her stepbrother (counts b-1, d-1, and j-1).[5]

On September 25, 2019, the children were ordered released to the maternal grandmother. Subsequently, mother reported she and father had moved in together and planned to live as a family.

E. *Subsequent Jurisdiction and Disposition Hearing*

On November 22, 2019, the court sustained count s-1 of the supplemental petition, and counts b-1, d-1, and j-1, as amended, of the subsequent petition. In sustaining these counts, the court specifically found that Camilla had been sexually abused by her stepbrother, mother knew of the sexual abuse and failed to protect Camilla from further abuse, father had been living with the family in violation of the court's prior orders, and the previous disposition had been ineffective in protecting the children.

With regard to disposition, mother's counsel did not contest DCFS's recommendation that the children be removed from mother's custody, but requested that mother be allowed to move into maternal grandmother's home with the children. Angel's

---

[5] "[S]ubsequent and supplemental petitions are different. A subsequent petition is filed when new, independent allegations of dependency can be made after the court has initially declared a minor to be a dependent child. (§ 342.) A supplemental petition is filed, inter alia, when a dependent child has been placed with a parent, but the department now seeks to remove the child, effectively requesting the court to modify its previous placement order. (See § 387, subd. (a).)" (*In re Barbara P.* (1994) 30 Cal.App.4th 926, 933.)

counsel found the issue a "close call," but concurred in the request.

Nathan's counsel said he was "torn as to what to recommend," noting that although mother at times acknowledged the sexual abuse, she continued to say as recently as November 2019 that Camilla was lying about what happened to her. Moreover, counsel was concerned that mother had not been following court orders. Thus, counsel said, he would "like to see a little bit more compliance [by] mother before I could . . . join in . . . mother's argument as to mother moving into the home of the maternal grandmother."

Camilla's counsel noted both that father did not believe his son had sexually assaulted Camilla, and that mother relied on father for financial support. Thus, counsel said, "mother seems to have her loyalties divided at this point. And I would like to see her commitment to Camilla be made more clear before she's in the home."

Counsel for DCFS said there was "absolutely no evidence" it would be in the children's best interests for mother to reside in the home, urging that mother had not been compliant with the court's orders, and maternal grandmother would not be able to continually monitor mother.

After hearing argument, the court declined to permit mother to move into the maternal grandmother's home. The court noted that mother had permitted father to have unmonitored contact with the children in violation of court orders, and when mother was told Camilla had been sexually abused, she "indicated that she believed the child was a pathological liar, had behavioral issues that she felt overwhelmed by, that her bond with the child was weak, that she didn't believe

the child [because of] the lack of physical evidence, despite the evidence before the court that there was significant time spent explaining to the mother how there are often not signs of physical sexual abuse after a certain period of time. That was not sufficient to convince the mother." Thus, the court said, "there remains a risk to these children being in the mother's custody . . . and . . . the maternal grandmother's presence is not sufficient to alleviate the concerns given the amount of contact and, essentially, unmonitored contact that would occur." The court ordered additional services for the family, and granted mother monitored visits with the children three times per week.

Mother timely appealed.

## DISCUSSION

Mother's sole contention on appeal is that the juvenile court abused its discretion by denying her request to live with the children in the maternal grandmother's home. For the reasons that follow, we find no abuse of discretion.

Section 362, subdivision (d) authorizes the juvenile court to "direct any reasonable orders to the parents" of a dependent child the court deems necessary and proper to ensure appropriate care, supervision, custody, conduct, maintenance, and support of the child. (See also § 362, subd. (a).) Such orders shall include visitation between parents and children, which shall be "as frequent as possible, consistent with the well-being of the child." (§ 362.1, subd. (a)(1)(A).)

We review the juvenile court's dispositional order for an abuse of discretion. " 'The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On appeal, this determination cannot be reversed absent a clear abuse of

8

discretion.' (*In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 474; see also *In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006.)" (*In re D.P.* (2020) Cal.App.5th 1058, 1071.)

Mother contends the children would not be at risk if she lived with them because the grandmother would be in the home. She further urges the children would benefit from living with her because they were bonded to her and she presented no safety risk to them.

The juvenile court was well within its discretion in concluding otherwise. As we have described, mother repeatedly had made choices that put the children at risk in order to preserve her relationship with father, including allowing father to live with the family in violation of court orders. Mother's response to Camilla's disclosure that she had been sexually abused by father's son Tito fit this pattern: Although mother initially expressed support for Camilla, in father's presence mother referred to Camilla as a liar and suggested Camilla had fabricated the sexual abuse claims. Mother also continued to allow father to bring Tito to her home, and she told the CSW that once the dependency cases were closed, she intended to make a home with father and his children, including Tito. Given mother's continuing relationship with father, her desire to make a home with him and his children, and her willingness to disobey court orders, there can be no doubt that permitting mother to live in grandmother's home would have increased the risk that Camilla and her brothers would have unsupervised contact with father and Tito.

Mother asserts that grandmother's presence in the home would have been effective in ensuring that the court's orders were followed, but the juvenile court reasonably concluded otherwise.

There was evidence that earlier in the proceeding, while the maternal grandmother was living with mother and the children, father had been permitted to spend nights at the home in violation of the court's order. In view of this history, the juvenile court reasonably could have concluded that grandmother's presence in the home was not sufficient to ensure that the court's orders would be followed.

## DISPOSITION

The November 22, 2019 order is affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



EDMON, P. J.


We concur:



LAVIN, J.



DHANIDINA, J.