Filed 4/4/23 In re M.P. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re M.P., et al., Persons Coming Under the Juvenile Court Law. | B315919 (Los Angeles County Super. Ct. No. 19LJJP00427A-C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. M.P., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael C. Kelley, Judge. Affirmed.

Serobian Law, Inc. and Liana Serobian, by appointment of the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Interim County Counsel, Kim Nemoy, Assistant County Counsel, and Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

**INTRODUCTION**

Michael P. (father) appeals from the juvenile court's custody order granting mother full legal and physical custody of their children and granting father monitored visitation. (Welf. & Inst. Code, § 362.4.)[1] Father contends the court's "failure to make the required express findings under sections 361, 342, or 387 resulted in an illegal removal" of the children from his custody. As the court appropriately determined that the best interests of the children should guide custody arrangements upon the termination of dependency jurisdiction, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

The family consists of father, E.S. (mother), and their three children, M.P. (born Feb. 2013), I.P. (born Mar. 2014), and A.P. (born July 2015). Father and mother ended their relationship in 2015. A January 2017 family law order granted the parents joint legal custody of the children, mother primary physical custody, and father custody on alternating weekends.

In May 2019, the Department of Children and Family Services (DCFS) received a referral alleging M.P. and I.P. returned from a visit with father with welt marks on their bodies and reported father had hit them with a belt and a metal hanger for dropping food. After mother discovered the marks, A.P. told her that father also hit him on his feet with a belt. Mother called law enforcement. Father denied the allegations and asserted mother coached the children. DCFS reported concern about the children being in father's care given his history of being aggressive, perpetuating domestic violence

---

[1] All further statutory references are to the Welfare and Institutions Code.

against his girlfriend in the children's presence, and getting physical with mother's husband during a custody exchange.

On June 19, 2019, the dependency court signed a removal order authorizing DCFS to detain the children from father. On June 25, 2019, DCFS filed a dependency petition on behalf of all three children based on father's physical abuse. The next day, the juvenile court ordered that the children be detained from father, that he have monitored visits, and that the children remained released to mother.

In July 2019, M.P. and I.P. confirmed the referral incident to a social worker. I.P. reported that father had gone to jail for hitting his girlfriend. Mother told the social worker that father had hit the children before but not with objects. She also was aware that father physically fought with his girlfriend one time.

In October 2020, DCFS reported the parents had each enrolled in parenting classes. The parents both reported that their relationship had improved, but they continued to have conflict; mother reported father cursed at the children, causing the children to fear him, and father complained about mother's husband. DCFS continued to have concerns regarding the parents' ability to co-parent as well as father's anger issues.

On October 21, 2020, the juvenile court found jurisdiction over the children pursuant to section 300, subdivision (b)(1), after father pled no contest to an amended count stating that father inappropriately physically disciplined the children and used inappropriate language that caused the children to be fearful of him. The court declared the children dependents of the court and ordered that the children remain placed in the home of both parents and that the parents receive family maintenance services. The children's release to father was over the objection of DCFS. Father's services

3

included a parenting course, anger management, family preservation services, and individual counseling to address appropriate discipline, anger management, and co-parenting.

Subsequently, DCFS reported the children were thriving in mother's care and enjoyed spending weekends with father. However, the children stated that father would make derogatory statements to mother during phone calls and use foul language in conversations with them and in their presence. Father reported he had finished a parenting course but did not have time or money to spend on anger management classes. Father had also not participated in individual counseling as ordered by the court. Mother reported she continued to have issues with father at custody exchanges, and he had had several altercations with mother's husband as well as her mother-in-law.

On April 21, 2021, the court admonished the parents not to discuss the case with the children and not to direct inappropriate language at the children. On May 3, 2021, a social worker spoke with A.P., who reported that father used foul language "all the time" when talking to him and his siblings.

At a section 364 review hearing on May 17, 2021, the court ordered that jurisdiction and family maintenance services continue. The court again admonished the parents not to discuss the case or make disparaging remarks about one another to the children. DCFS was ordered to provide father with low cost referrals and assist father with funds for court ordered programs.

In the subsequent review period, father reported "he has not completed any services required by [the] court" and he did not know what the court wanted him to do. When the social worker tried to discuss the programs he had been ordered to do, he stated, "I am not doing nothing because the system is fucked up and I got my other two kids and don't care anymore."

4

When the social worker mentioned multiple resources DCFS had provided him, father responded, "Oh, well." DCFS expressed concern that "father lacks the skills to be an effective parent without completion of his Court Order[ed] Case Plan, which included anger management, and individual counseling with a licensed therapist to address appropriate discipline, anger management, and co-parenting."[2] DCFS recommended the case be closed with a custody order providing sole legal and physical custody to mother with monitored visits for father.

A contested section 364 review hearing convened on September 27, 2021. Counsel for DCFS requested that the court terminate jurisdiction and issue a family law order granting mother sole legal and physical custody and father monitored visitation. The court admitted into evidence various videos and transcripts of videos showing three phone calls in which father was upset at M.P. for missing calls with him, cursed at M.P., and disparaged mother. Father then testified. He stated that he saw the allegations sustained against him as "unfairness, frustration, irritating" and that he was not being heard by DCFS. He understood his case plan included anger management, counseling, and a parenting course, but he claimed that he was unable to pay for the classes and that the class schedules conflicted with his work schedule. He also testified the DCFS case worker told him there was no need for him to do the classes because mother was going to get sole custody anyway. The court continued the hearing.

On October 5, 2021, the court heard argument from the parties. Counsel for DCFS requested the court terminate jurisdiction with a custody

_____

[2] Although father had been ordered to do family preservation services, DCFS noted that father did not qualify for those services because he was not the children's primary caregiver.

5

order providing mother with sole legal and sole physical custody, and requiring father's visits be monitored. Counsel relied on father's failure to complete the case plan, his persistent anger management problems, and his failure to acknowledge the case issues. Counsel for mother joined in DCFS's request.

Counsel for the children agreed the court should terminate jurisdiction. However, minor's counsel argued the parents should have joint legal custody, with mother having tie-breaking authority. Although minor's counsel agreed that mother should have sole physical custody, she recommended father be permitted to have overnight weekend visitation. As for telephonic visitation, because the children would get upset when father lost his temper during phone calls with them, counsel requested mother be permitted to terminate father's phone calls with the children if father's conduct was inappropriate. Counsel argued that father continued to "demonstrate a questionable understanding as to how [the dependency] case came about" and had not complied with his case plan.

Counsel for father requested the custody order reflect joint legal and physical custody, with the children's primary residence being with mother. Counsel noted the children enjoyed spending time with father and DCFS did not indicate the children were unsafe with him. Father's counsel argued it would be improper to "take away father's custody" when terminating jurisdiction given that the children had remained released to father since the disposition hearing.

The court terminated jurisdiction and issued a custody order granting mother sole legal and physical custody of the children, and granting father monitored visitation. The court relied on *In re T.S.* (2020) 52 Cal.App.5th 503 (*T.S.*), in finding that the children's best interest was the key consideration in

6

setting the custody arrangements at the close of the case, "not whether anyone has demonstrated a safety risk." The court noted the sustained petition related to father's inappropriate physical discipline and inappropriate language that caused the children to be fearful. The court further stated the evidence showed father did not understand the difference between disciplining children and verbally terrorizing them, and that father could not control his anger toward mother or the children. The court did not find credible father's explanations for his lack of progress in his case plan; rather, it found father "made the conscious choice" not to participate in any services other than a parenting class.

Father timely appealed from the juvenile court's custody orders.

## DISCUSSION

A. *Applicable Law and Standards of Review*

At a section 364 review hearing, the juvenile court must terminate dependency jurisdiction unless the conditions that created the need for supervision still exist or are likely to exist if supervision is discontinued. (§ 364, subd. (c); see *T.S., supra,* 52 Cal.App.5th at pp. 512–513.) "The juvenile court makes this determination based on the totality of the evidence before it." (*In re Armando L.* (2016) 1 Cal.App.5th 606, 615.)

When a juvenile court terminates its jurisdiction over a dependent child whose parents are not together, the juvenile court is generally called upon to enter a custody order determining custody of and visitation with the minor children. (§ 362.4, subd. (a) ["If the juvenile court terminates its jurisdiction over a minor who has been adjudged a dependent child of the juvenile court . . . [and] an order has been entered with regard to the custody of that minor, the juvenile court on its own motion, may issue . . . an order

7

determining the custody of, or visitation with, the child"].) "Any custody or visitation order issued . . . at the time the juvenile court terminates its jurisdiction pursuant to Section 362.4 . . . shall be a final judgment and shall remain in effect after that jurisdiction is terminated," and it may only be modified in a subsequent family court proceeding if the court finds that "there has been a significant change of circumstances since the juvenile court issued the order and modification of the order is in the best interests of the child." (§ 302, subd. (d).)

"When making a custody determination under section 362.4, 'the court's focus and primary consideration must always be the best interests of the child.'" (*T.S., supra*, 52 Cal.App.5th at p. 513; accord *In re J.M.* (Mar. 2, 2023, B313754) __ Cal.App.5th ___ [2023 WL 2443577, p. *11] (*J.M.*) ["'[I]n making exit orders, the juvenile court must look at the best interests of the child"]; *In re Maya L.* (2014) 232 Cal.App.4th 81, 102–103 ["'When making a custody determination in any dependency case, the court's focus and primary consideration must always be the best interests of the child'"].) "Because juvenile dependency proceedings arise when children are subject to or at risk of abuse or neglect, '[t]he presumption of parental fitness that underlies custody law in the family court just does not apply. . . . Rather the juvenile court, which has been intimately involved in the protection of the child, is best situated to make custody determinations based on the best interests of the child without any preferences or presumptions.'" (*J.M.,* at p. __ [2023 WL 2443577, p. *11].) "The court must be guided by the totality of the circumstances and issue orders that are in the child's best interests." (*Ibid.*)

"'[T]he juvenile court has broad discretion to make custody [and visitation] orders when it terminates jurisdiction in a dependency case (§ 362.4).'" (*J.M., supra,* __ Cal.App.5th at p. __ [2023 WL 2443577, p. *11].)

We review the juvenile court's custody orders for abuse of that discretion. (*Ibid.*; see *In re C.M.* (2019) 38 Cal.App.5th 101, 104; *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300 (*Bridget A.*).)  We will not disturb such a ruling unless the juvenile court made an "'arbitrary, capricious, or patently absurd determination.'"  (*J.M.,* at p. __ [2023 WL 2443577, p. *11]; see *Bridget A.*, at p. 300.)  "'"The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court."'"  (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319.)  "'"The question of whether a trial court applied the correct legal standard to an issue in exercising its discretion is a question of law [citation] requiring de novo review [citation].'"'"  (*In re S.G.* (2021) 71 Cal.App.5th 654, 673.)

"'It is the [juvenile] court's role to assess the credibility of the various witnesses, to weigh the evidence to resolve the conflicts in the evidence.  We have no power to judge the effect or value of the evidence, to weigh the evidence, to consider the credibility of witnesses or to resolve conflicts in the evidence or the reasonable inferences which may be drawn from that evidence.  [Citation.]'"  (*In re Casey D.* (1999) 70 Cal.App.4th 38, 52–53, disapproved on other grounds by *In re Caden C.* (2021) 11 Cal.5th 614.)

B. *Analysis*

Father argues that the court "removed" the children from him via its final custody order, and that the court did so without making a detriment finding by clear and convincing evidence as required by section 361.  Father correctly notes that the court had originally released the children to both him and mother with a "home of parent" order at disposition, but when the court

9

terminated jurisdiction, it made more restrictive orders for father by giving mother sole physical custody and giving him only monitored visits. Father contends the custody order thus constituted an "illegal removal."

Section 361 requires that "[a] dependent child shall not be taken from the physical custody of his or her parents . . . with whom the child did not reside at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence that there would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the child for the parent . . . to live with the child or otherwise exercise the parent's . . . right to physical custody, and there are no reasonable means by which the child's physical and emotional health can be protected without removing the child from the child's parent's . . . physical custody." (§ 361, subd. (d); see *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 248.)

Contrary to father's contention, section 361 "does not apply to custody and visitation determinations made at a section 364 review hearing concurrent with the termination of juvenile court jurisdiction." (*J.M., supra,* __ Cal.App.5th at p. __ [2023 WL 2443577, p. *12].) "'To be sure, at the disposition stage of a dependency proceeding, a court may not remove a child from a parent's custody and place the child in the custody of [DCFS] unless the court finds there is a substantial danger to the child and no available services to protect the child absent removal. [Citation.] . . . There is no statutory language, however, suggesting this standard be applied when the court issues a custody order upon the termination of jurisdiction pursuant to section 364. To the contrary, at [the section 364] stage of the proceedings, the court must consider the child's best interest.'" (*J.M.,* at p. __ [2023 WL 2443577, p. *12], quoting *T.S., supra,* 52 Cal.App.5th at p. 515.)

10

As previously noted, section 362.4 permits a court terminating its jurisdiction at a section 364 hearing to also enter orders "determining the custody of, or visitation with, the child" following termination of juvenile court jurisdiction. (§ 362.4, subd. (a); *In re Roger S.* (1992) 4 Cal.App.4th 25, 30.) "Section 362.4 does not require a finding of detriment under any circumstances; as a result, courts have applied the best interest standard in determining appropriate custody and visitation exit orders at this stage." (*J.M., supra,* __ Cal.App.5th at p. __ [2023 WL 2443577, p. *12].)

Father also argues that a court must issue a custody order that is "in line with the previous custody determinations" unless DCFS has filed a supplemental petition under section 342 or a subsequent petition under section 387.[3] This argument is unsupported by any relevant authority. Moreover, as discussed above, the issue is not whether a new allegation of neglect or abuse has been proved against father, but rather what custody arrangement the court views as serving the children's best interests.

To the extent father suggests he lacked a full opportunity to challenge the custody terms recommended by DCFS, we note that DCFS gave father clear prior notice of its recommendation to seek a custody order providing mother with sole legal and physical custody and limiting father to monitored visitation. Father had every opportunity to present evidence at the section 364 hearing to convince the court that he should maintain joint physical

---

[3] "A subsequent petition is filed when new, independent allegations of dependency can be made after the court has initially declared a minor to be a dependent child. (§ 342.) A supplemental petition is filed, inter alia, when a dependent child has been placed with a parent, but [DCFS] now seeks to remove the child, effectively requesting the court to modify its previous placement order. (See § 387, subd. (a).)" (*In re Barbara P.* (1994) 30 Cal.App.4th 926, 933.)

custody or unmonitored visitation. Indeed, father testified at the hearing for this purpose.

In sum, a best interests analysis appropriately governed the court's custody determinations in the final custody order. The court was not required to make a section 361 detriment finding nor was the court prohibited from issuing a custody order without the filing of a supplemental or subsequent petition under sections 342 and 387.

Father does not argue that the juvenile court abused its discretion in determining the custody order granting sole physical custody to mother and monitored visitation for him was in the children's best interest under section 362.4. He contends only that the juvenile court failed to present sufficient evidence to support "removal" of the children by clear and convincing evidence. As discussed above, father relies on a standard that is inapplicable to the court's findings.

In any event, the juvenile court's custody orders did not constitute an abuse of discretion. The court determined father had failed to comply with his case plan that was designed to assist him with his anger management issues that brought the children before the dependency court. The court did not believe father's testimony in which he made excuses for his failure to complete the required anger management program and individual counseling. Rather, the court found father had willfully determined not to do them. "As a reviewing court, we have no power to revisit the credibility of [a] witness or reweigh the evidence." (*In re Maya L., supra*, 232 Cal.App.4th at p. 104, fn. 6.) The court further relied on evidence demonstrating that father remained unable to control his anger towards the children and continued to "verbally terrorize[]" them. We find no abuse of discretion.

## DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STONE, J.*

We concur:


CURREY, Acting P. J.


COLLINS, J.

---

*Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.