Filed 7/29/14  Wallace E. v. Super. Ct. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| WALLACE E.,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF HUMBOLDT COUNTY,<br><br>        Respondent;<br><br>HUMBOLDT COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES et al.,<br><br>        Real Parties in Interest. | A141602<br><br>(Humboldt County<br>Super. Ct. No. JV120001) |

Petitioner Wallace E., the presumed father of a six-year-old girl, petitions for a writ of mandate to set aside a juvenile court order dated April 11, 2014, terminating reunification services and setting a permanency planning hearing for his daughter for August 4, 2014.  He challenges the juvenile court order, issued after a contested 24-month review hearing on the grounds (1) the juvenile court erred in finding that reasonable services had been offered  and (2) there is no clear and convincing evidence that returning the child to his custody would be detrimental, as the court found.  We conclude that the juvenile court correctly found that adequate services had been provided and the evidence amply supports the finding that returning the child to her father would be detrimental.  We shall therefore deny the requested relief.

1

The child came to the attention of the Humboldt County Department of Health and Human Services (the department) at birth when she tested positive for methamphetamine. Based on allegations of general neglect and substantial risk to the child, petitioner and the child's mother,[1] participated in a voluntary family maintenance program from July 31, 2008 through November 28, 2008.[2]

The record reflects that petitioner began drinking alcohol as a teenager; as an adult he started using marijuana and methamphetamines. He was convicted of vandalism in 1992 and 1996. In early August 2008 he admitted he drank alcohol every other day, but stated that he did not wish to participate in alcohol and other drug treatment.

On October 2, 2011, the mother reported that petitioner had assaulted her. Petitioner left home, but subsequently the couple reconciled and he returned. On October 11, 2011, a mandated reporter informed the department that the mother and petitioner frequently were violent towards one another and regularly used drugs and alcohol around the child. On October 18, 2011, a social worker paid an unannounced visit to the home, where she observed drug paraphernalia and vodka. The mother stated that she sipped vodka all day, consuming about half a bottle, and that petitioner drank the other half of the bottle when he returned from work. She also indicated that she smoked marijuana with the door open so as to avoid affecting the child. In the mother's opinion, her fighting with petitioner did not affect the then three-year old child.

On November 8, 2011, petitioner told the social worker that he had completed a domestic violence counseling program 15 years earlier, that he had learned to walk away from a disagreement rather than fight physically, and that he had no problems with

_____

[1] Both parents have problematic and intertwined histories with respect to their parenting. Because the father is the sole petitioner here, we focus on his history, mentioning the mother only as necessary to provide context.

[2] Only the substantial risk allegations were substantiated. Between December 10, 2009 and October 11, 2011, the family was referred to Child Welfare Services five other times; each referral was either determined to be unfounded or the investigation was inconclusive.

alcohol. On November 22, he told the social worker he did not want to meet with her again and left the room.

The department filed a non-detained petition[3] on January 5, 2012, alleging that due to her parents' substance abuse and domestic violence, the child fell within Welfare and Institutions Code section 300, subdivision (b),[4] which applies when a child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse." Shortly after the non-detained petition was filed, petitioner was arrested on charges of possession for sale and transportation of methamphetamine, being under the influence of a controlled substance, and driving while unlicensed. When arrested, he admitted that he had been selling methamphetamine for about two months.

At the initial juvenile court hearing the court determined petitioner was the child's presumed father. On February 23, 2012, the department filed an amended petition, together with a court order authorizing protective custody of the child. In the report supporting the amended petition, another social worker stated that both parents smelled strongly of alcohol at the initial hearing on the non-detained petition. Petitioner admitted drinking alcohol prior to the hearing. At the earlier, non-detention hearing both parents were ordered to stop driving the child because they lacked valid licenses, but they subsequently had been observed driving with the minor in the car. The department

---

[3] A "non-detained petition" is a term of art for a petition alleging that the safety and protection of a child requires judicial intervention, but that there is no immediate risk to the child and detention is not required.

[4] All subsequent statutory references are to the Welfare and Institutions Code.

3

arranged transportation for both parents to participate in substance abuse treatment, but neither parent attended. Both parents admitted to violence occurring between them when the child was present. On February 24, 2012, the department filed a second amended petition, which the court sustained, as amended, on March 15, 2012. A disposition hearing was set for April 19, 2012. Prior to the disposition hearing, on April 2, 2012, petitioner was arrested for public intoxication.

At the disposition hearing, the court declared the child a dependent of the court due to the parents' unaddressed substance abuse and domestic violence issues which prevented them from providing adequately for the child's safety, supervision and care. The court also found by clear and convincing evidence that the department had made reasonable efforts to prevent or eliminate the need to remove the child from the home, as well as reasonable efforts to return the child to a safe home and finalize a permanent plan for the child.

The department's report, prepared for the six-month review, indicated that petitioner had submitted to drug testing when requested and his tests were negative. He had enrolled in substance abuse treatment and was attending two groups per week. He entered a residential treatment program after completing detoxification and remained in the program to find appropriate housing and maintain his sobriety. However, petitioner's house manager reported that while the child was on an extended, unsupervised visit with her parents, between September 15 and 23, 2012, petitioner resumed the use of alcohol and methamphetamine. Petitioner and the mother, who had also relapsed, were evicted. Because of the relapse and the parents' failure to advise the department of their relapse and eviction, the department recommended only supervised visitation with the child. The department recognized the progress both parents had made in addressing their "substantial substance abuse issues," but found there was a continuing need "to address their on-going substance abuse concerns and boundaries with family members as it impacts their judgment and ability to parent [the child] appropriately." It recommended that reunification services be continued because there was a "substantial probability that one or both of the parents will be able to reunify" with the child. The juvenile court

4

found by clear and convincing evidence that reasonable services had been provided or offered to the parents.

The report submitted for the 12-month review hearing indicated that petitioner was still struggling with sobriety. He and the mother had moved into the "Multiple Assistance Center" in January 2013, but he tested positive for methamphetamine in early February. He left the Multiple Assistance Center by the end of February and both parents moved into the home of a sober, family friend. Nonetheless, petitioner continued in his aftercare program, from which he graduated in March 2013. After graduation, he participated in a drug education class. He also participated in weekly parenting groups. When the parents moved to the Multiple Assistance Center they had unsupervised visits with the child; however, after the mother tested positive for methamphetamine on January 15, 2013, the visits were again supervised, either at the Multiple Assistance Center or, after a further positive drug test, at the" Family Connection Center." Since mid-February both parents consistently attended scheduled visits and brought activities and books to engage their child. During the visits the child hugged her parents and appeared to be actively engaged with them. After reviewing the 12-month status report, the juvenile court ordered continued reunification services to both parents and again found, by clear and convincing evidence, that reasonable services had been provided.

The department's report prepared for the 18-month permanency review indicated that petitioner relapsed after his graduation from aftercare; however, he had reengaged with 12-step programs and was scheduled to enter the "Lee Brown Program." The report noted the love and positive attachment between the parents and the child. However, it concluded, "The parents have experienced ongoing struggles and relapses with methamphetamine and alcohol. The[y] have demonstrated [a] pattern of maintaining sobriety for a month or two and then relapsing. Unfortunately, these relapses were during times when [the child] was transitioning back into their care, and thus placed her at serious risk of harm. Further the parents actions have had a detrimental emotional impact on [the child]." The report recommended that the court terminate reunification services to both parents and set a hearing pursuant to section 366.26. The court, however,

5

declined to do so. It found that petitioner had made minimal progress towards alleviating the problems that had necessitated the court's intervention. Again, it found by clear and convincing evidence that reasonable services had been provided or offered to the parents. It ordered the department to provide continued reunification services to both parents and set the matter for a 24-month status review hearing.

The mother's first overnight, unsupervised visit with the child after the 18-month hearing was on December 6, 2013. The next day, the Eureka police responded to a report that a woman, later identified as the mother, was stumbling and falling on her child; she was found to have a blood alcohol content of .214 percent and was arrested for child endangerment and being under the influence. When the police asked the child whether she lived with her father, she replied that he lived in McKinleyville. She added that she liked her father, but that he sometimes kicked her. Because he did not have a driver's license petitioner was unable to get to his daughter when the mother was arrested.

After this incident, parental visits were restricted to visits under the supervision of a substitute care provider. In January 2014, the substitute care provider reported the parents were saying inappropriate things to the child and were making promises they could not keep. The supervision of parental visits was then transferred to social workers at the Family Connection Center. The department's report, prepared for the 24-month hearing, reiterated the parents' temporary success in the program and repeated relapses. It noted their "detrimental emotional impact on the child." The report concluded that the child "was removed on February 23, 2012 and the parents have inconsistently engaged with their care plan. The parents experience ongoing struggles and relapses with methamphetamine and alcohol. [The parents] love their daughter. [The child] states she loves her parents and wants to live with them. Sadly, this cannot be recommended as the maximum time for the provision of services has expired." It then recommended that services be terminated and a section 366.26 hearing be set.

The child's position, as expressed by her counsel, was more pointed. Based on the visitation history she concluded that "the mere imposition of parenting duties on [both mother and father] leads to substance abuse. Yet, each time overnight and extended

6

unsupervised visitation occurred, the parents relapsed." The child's counsel noted that the court granted petitioner extended services even though he was not engaged in a substance abuse treatment program, which was, in counsel's opinion, "an unprecedented opportunity to achieve reunification." She requested that petitioner be found to have made no progress and that he failed to comply with the court ordered case plan.

At the 24-month status review hearing on March 10, 2014, the juvenile court initially focused on what it viewed as conflicting issues: I'm really conflicted in this case. Because, on the one hand, it's certainly not in the best interest of this child to go home to dad's. There are a lot of reasons why I think that would be detrimental at this stage, and I don't need to go through all of them at this moment. [¶] On the other hand, while he may not have been legally entitled to services over the last six months, those were court-ordered, rightly or wrongly, and without objection, I believe. And I don't find evidence that it's not just reasonable efforts have been provided. *I don't find any efforts*. If you look at the report six months ago and the reasonable efforts, everything is the same in the current report with the exception that they added one more, whatever that means, consultation between the social worker and Safe Haven staff. Other than that, what has the department done over the last six months? [¶] . . . [¶] What has the department done as to dad? Mom isn't really an issue . . . . But as to dad . . . What has the department done and what is the evidence of what the department has done over the last six months?" (Italics added.)

County counsel responded that at the 24-month hearing, the department's reasonable efforts were not germane. He argued that petitioner had been in the system for two years, knew what was expected of him, and that the social worker was available to assist him if he had requested help. The court was skeptical, stating, "I don't think sitting back, saying we're available for help, if you need help, pick up the phone and call us, is reasonable services." Concerned with the dilemma of concluding that it was not in the child's best interests to be returned to the father, but believing that the department had not provided reasonable services between the 18-month and 24-month hearings, the court ordered further briefing.

7

After receiving that briefing, the court held a hearing on April 10, 2014, at which it terminated reunification services and set a section 366.26 hearing for August 4, 2014. In doing so, it commented: "I would note that throughout this dependency action, until this most recent date, the court has consistently made findings that reasonable services have been provided. I note that there are not any extraordinary circumstances which prevented the father from fully participating in and complying with the case plan. [¶] I weigh the various interests and I exercise my discretion in that regard. It appears to me that the likelihood of success or further reunification, if I were to continue the matter, is nil. There is no chance that [the child] would be returned to the parents if I provided some additional time for additional services."

In challenging the court's order, petitioner argues that the court must find by clear and convincing evidence that reasonable services were provided or offered to the parent before setting a hearing pursuant to section 366.26. (§ 366.22, subd. (b).) Section 366.22, subdivision (a), which governs 18-month permanency review hearings, specifies that the court may not order the setting of a section 366.26 hearing "unless there is clear and convincing evidence that reasonable services have been provided or offered to the parent or legal guardian" (§ 366.22. subd. (b)(3)). However, that limitation is not contained in section 366.25, which governs the setting of a subsequent permanency review hearing at 24 months. (§ 366.25, subd. (a)(1).) Rather, at the 24-month subsequent permanency review hearing, the court must "determine whether reasonable services have been offered or provided" (§ 366.25, subd. (a)(3)), but it is directed to set a section 366.26 hearing "[i]f the child is not returned to a parent or legal guardian" (§ 366.25, subd. (a)(3)). In reaching its determination the court is directed to consider the parent's efforts and progress as demonstrated by "the extent to which he or she avails himself or herself of services provided." (§ 366.25, subd. (a)(1).) Whether reasonable services have been provided since the 18-month review is not dispositive.

The department may be less actively involved in providing services after the 18-month permanency hearing than was required previously. In deciding whether to terminate parental rights, the court must assess not only the parent's current parenting

8

abilities, but also whether the parent is likely to sustain adequate parenting skills in the future.  (See *In re Edward R.* (1993) 12 Cal.App.4th 116, 126.)  Therefore, it is reasonable for the department to discontinue the initiation of supportive services in an effort to determine whether the parent will be capable of obtaining necessary services without supervision.  Through and including the 18-month status review, the juvenile court repeatedly concluded that reasonable services had been provided.  Whether reasonable services had been offered was questioned only at the 24-month hearing.  Yet, in assessing whether a parental relationship should be terminated, the initiative a parent has shown in resolving problems is a relevant factor.  (See, e.g., *In re Sue E. v. Superior Court* (1997) 54 Cal.App.4th 399, 403 [concluding the parents "lacked the initiative to take advantage of [the offered] services"]; *In re Christina L.* (1992) 3 Cal.App.4th 404, 417 [weighing mother's "persistent refusal" to apply for voluntary services].)  Here, the department's active provision of support services through the 18-month review and thereafter making them available on demand was a reasonable means to evaluate whether petitioner was capable of responsibly providing for the child's care if she were returned to his custody.

Dependency law has two, sometimes conflicting, goals:  (1) to provide the parents of a child removed from parental care with assistance in resolving the problems that led to the removal and (2) not requiring children who have been removed from parental care to "spend their lives in the limbo of foster care."  (*In re David H.* (1995) 33 Cal.App.4th 368, 387-388.)  At some point the latter goal becomes dispositive. Indeed, in *David H.* the court held that a minimum period of 12 months of services  need not be provided to parents before their children may be permanently removed from their custody.  Once a court determines that intervention is necessary, the parties are to receive time-limited protective and reunification services, and permanency planning at the earliest possible stage for children who cannot safely live with their parents.  (*Id*. at p. 388.)  If a significant amount of time has already passed and the parents have requested or acceded to  delays in adjudicating the dependency of their child, they may not object to the setting of a section 366.26 hearing after an abbreviated period of reunification services.  (*Ibid.*;

see *In re Barbara P.* (1994) 30 Cal.App.4th 926, 933-934 [subsequent petition did not require the court to order additional reunification services due to "state's interest in assuring that minors whose parents cannot provide them with a stable home have another opportunity for such a home life within a reasonable time"]; *Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 763 ["Petitioner's real problem was not a lack of services available but a lack of initiative to consistently take advantage of the services that were offered."].)

The child's parents began receiving services in July 2008, and the child was removed from her home in February 2012. On April 19, 2012, the juvenile court found that the child faced substantial danger if returned home and ordered the department to provide the parents with reunification services. The court terminated services on April 11, 2014, approximately five years and eight months after petitioner first received therapeutic services following the child's birth and two years after formal reunification services were ordered.[5] Although services were not *actively* offered after the 18-month status hearing, the services that were provided over this lengthy period were nonetheless entirely reasonable.

At a 24-month review hearing, the juvenile court must order the return of a child to the parent's physical custody unless the court finds by a preponderance of the evidence, that the child's return would create a substantial risk of detriment to the child's safety, protection or physical or emotional well-being. (§ 366.25, subd. (a)(1).) In reviewing the juvenile court's detriment determination we apply a substantial evidence test. (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1400-1401.) Here the evidence summarized above amply supports the court's finding that returning the child to petitioner's custody would pose a substantial risk of such detriment. Petitioner has had a substance abuse problem since his teenage years. While he has made recurring efforts to overcome these problems, the efforts have not been successful on a sustained basis. As

---

[5] These calculation do not include services petitioner states he received as far back as 15 years before the child's birth.

10

the department's August 2013 report observed, petitioner and the mother both "demonstrated [a] pattern of maintaining sobriety for a month or two and then relapsing. Unfortunately these relapses were during times when the child was transitioning  back into their care, and thus placed her at serious risk of harm."  As of the 24-month status review hearing petitioner was living in a family friend's home  and the child was not living with her father.  Petitioner had not obtained anger management counseling and had decided not to enter the "Lee Brown Program" for substance abuse.  Petitioner focused his energies on working at Sun Valley Bulb Farm and his engagement with the department was "limited."  In short, there was no evidence that petitioner had successfully changed his pattern of cycling between sobriety and substance and domestic abuse,  or that he could withstand the stresses of parenting.  He managed to stay sober and hold a job when unburdened by the daily demands of parenting, but as of the 24-month status hearing he was not yet capable of providing the child with a safe and secure home.  Although the evidence indicates that he surely loves his daughter, there is substantial evidence that after having received reasonable services for an extended period of time, petitioner was unable consistently to provide a nondetrimental environment for the child and that returning her to his care and custody would be detrimental.

## DISPOSITION

The petition for extraordinary relief is denied on the merits. (See Cal. Const., art. VI, § 14; *Kowis v. Howard* (1992) 3 Cal.4th 888, 894.) Because the permanency planning hearing is set for August 4, 2014, our decision is immediately final as to this court. (Cal. Rules of Court, rules 8.452(i), 8.490(2)(a).)

_____

Pollak, J.

We concur:

_____

McGuiness, P.J.

_____

Siggins, J.

12